May it please the Court. This appeal involves a discrete claim construction issue, which is whether the District Court erred in construing an unmodified term that is not a technical term of art, that is not an amorphous term, that is not a term that does not have an ordinary meaning, as being If you withdrew the plug claims without prejudice, how are those claims before us now? They were withdrawn without prejudice, Your Honor, solely for the purpose of, well we withdrew them based upon the Court's claim construction with the stipulation that I read that, but of course the question is, if you've withdrawn them without prejudice there's no final judgment on them, is there? So they're not before us, am I correct on that? It's a procedural point, but it's kind of an important one. My understanding, Your Honor, is that there was a final judgment in the case based upon the Court's claim construction of the term plug. If this Court were to reverse that claim construction, then we would have the opportunity to reassert the claims in the Court below. You can't do that. I mean, Judge Schrader is correct, isn't he, that those claims are withdrawn, they're not before us. It may be that the construction of the term plug affects the two remaining claims, and for that reason you're entitled to complain about the construction of the term plug, but we can't do anything for you about the claims that you dismissed. I agree with that, I agree with you, Your Honor. I don't believe that you can do anything with regard to those claims. I think that the only issues that are before this Court, that is correct, are with regard to the two particular claims that are on appeal. The only point that we are making in our brief is that with regard to what happens for purposes of a remand, that is a matter for the District Court. And so now what we're talking about isn't plug, we're talking about displacing means then, right? Both the plug and displacing means. Well, there's no reference to plug in the displacing means claims, is there? Well, there are two claims, Your Honor, there's Claim 27 and Claim 28. Okay, Claim 27, that's the plug claim, that one was one of those you dismissed without prejudice, right? Am I correct on that? Yes, Your Honor. So, all we have before us is 28 and that's the displacing means claim, right? I don't believe that is correct, Your Honor. I believe that the claim for Claim 27 is also before this Court. Well, okay. Looking then at Claim 28, which that is clearly before us, do you ever argue that displacing means is the same thing as plug? I'm not sure I understand your question. Do you make a clear argument that the structure corresponding to the displacing means is the plug? And if you do, then you have, of course, the problem that their plug is a little different than the structural collapsible plug that you have in your patent. Theirs is a solid plug. So, do you make the further argument that a solid plug is a structural equivalent to a collapsible or buckling plug? We make the argument, Your Honor, that the Court improperly identified the structure and the specification that corresponds to the displacing means limitation. That the structure... Wait a minute. I'm confused. I thought that now pretty much everybody agreed that the displacing means includes the plug, right? It does, Your Honor. Okay. So, in the structure of the plug shown in the specification is this collapsible plug, right? No. That's what I don't agree with, Your Honor. Can you show us where it's something more than that? I might have missed something on that. I only see collapsible plugs in the figures and things, but is there something more? Yes, Your Honor. Your Honor, the Court is correct that in the preferred embodiments that are disclosed in the specification, they all include a collapsible plug. This Court has held that a party is not limited to the structure disclosed in its preferred embodiments, and the structure can also be disclosed in the summary of the invention or in the abstract. In the abstract and summary of the invention of the 418 patent, there clearly is disclosed a plug which is not limited to an elastomeric plug, an internal chamber, and an air chamber. That is the structure that we contend is the proper structure for the displacing means. There is no limitation. Show us precisely the structure that corresponds to the displacing means. Show it to us in the packet. We've got the collapsible ones, by the way. The figures all collapse and we can see that, but show us the one that you want us to refer to. If the Court looks at column 3. What page is this on? This is page A98 of the Joint Appendix. A98, okay. Column 3. Beginning at line 50. Continuing to column 4. Line 10. There is a disclosure there of a valve outlet port and beginning at line 61. It says the minimum fluid displacement self-flushing connector further includes an air chamber and a plug adapted for being moved into a portion of the air chamber when the actuator is moved into the valve internal chamber. Movement of the plug into the air chamber results in a minimum displacement of fluid through the valve outlet port when the actuator is moved into the valve internal chamber. A displacement of air within the air chamber resulting from movement of the plug into a portion of the air chamber. That's describing the function. What's the structure that corresponds with the displacing means? Put it this way. The specification does not describe a rigid plug, right? It does not describe, it does not contain language that describes a rigid plug. That's correct. Okay. So your problem is this. The only structure that's described in the specification is a collapsible plug. So you've got to rely on equivalence to say that a rigid plug is the equivalent. With respect to the dismissed claims, you've got an argument that they use the term plug. Those claims aren't before us. You've got to deal with the fact that the claims before us are 112-6 claims and that your structure is a collapsible plug and you've got to show that a rigid plug is equivalent. What evidence is there in this record that a rigid plug is equivalent to a collapsible plug? Your Honor, I think the court is taking an overly narrow view of the structure that's disclosed in the specification. There is structure disclosed with regard to the preferred embodiments that is a collapsible plug. There is also structure, and I contend that the description in the summary of the invention discloses adequate structure. As this court said in the biomedics case, 490 F3rd 946, while the specification must contain structure linked to claim means, this is not a high bar. And the structure that's disclosed here, this is not simply functional language. A plug is structure. An air chamber is structure. And an internal chamber is structure. But I don't understand your answer in the question. What evidence is there of equivalence in this record? Is there an affidavit saying that a rigid plug is equivalent to a collapsible plug? I mean, what is there? There was evidence submitted below, Your Honor, that there was equivalence between the- Did you argue it in your brief even? I didn't find an argument on that in your brief. No, Your Honor, we did not raise that argument in our brief. Isn't that your whole argument? Our argument, Your Honor, is that the court misconstrued the term plug. But the plug claims you didn't put before us. You made a mistake. Your Honor, with regard to displacing means, the court acknowledged, and there's no dispute in the briefing, that the displacing means were construed to contain an elastomeric plug based upon the court's underlying claim construction of the term plug. That's what the court itself acknowledged. That's what the briefing acknowledged. So the issue of whether that was a correct construction and whether the plug of the invention necessarily must be elastomeric is part of the means plus function construction. That is, if the court looks at the way that the summary judgment order was written, that is clear from the summary judgment decision. If that was a mistake by the district court, which we contend it clearly was, then the case needs to be remanded under a proper- Are you saying that the district court said that the structure disclosed included a rigid plug? No, but the court heard, in our view, in two ways. It construed the function for purposes of the means plus function not to be limited to displacing means. It looked to sealing functions and to fluid functions. I don't understand what that has to do with what we're talking about now. Because of the court construing the function in that way, the court said that the elastomericity had to be part of the structure because the elastomericity is what enabled these ancillary functions. There is no dispute, and the court did not reach a decision based upon the notion of simple displacement. The crux of this invention, what this invention is about, what made it something novel over what existed before, is that you had a plug that occupied space within an internal chamber of a connector. You created an air chamber, which was a separate space. You were able to manipulate the volume of the internal chamber through which the liquid flowed by moving the plug in and out of the air chamber. That is something that had not been done before. For what I just described, which is the displacement, the only thing that is needed is a plug, an air chamber, an internal chamber. Whether the plug is rigid or not doesn't matter because it just needs to have volume. But it does matter because the air chamber gets affected by the collapsibility. The collapsibility in your plug is what opens up the air chamber. You're right. The air chamber is actually in the back end. Your Honor is referring to the internal chamber. Yes. With regard to the internal chamber, that can be accomplished. The opening of the internal chamber does not have to do with the displacement. It has to do with the fluid flow. Fluid flow is something that was known that could be done in a variety of ways. With regard to the description and the summary of the invention, the pure act of displacement- Do you want to save your rebuttal time? Yes, Your Honor. Mr. Dane, thank you. Mr. Pooley? Mr. Pooley, I threw a bit of a curve at Mr. Dane by talking about whether or not the plug claims were before us at all. But if we look at the district court's order, it is hereby ordered, adjudged, decreed, the connector does not infringe the entire patent, 418. He rules, the ruling that's before us and that we're reviewing, that 27 and 28, the plug claims as well, are not infringed. So don't we have full rights to deal with all of his plug arguments? And then you've got real problems because he imported a lot of limitations, didn't he? Let's deal with the fact that he says right here that he's dealing with the whole patent and he dismisses the whole thing without prejudice. That's his order right at the- She did dismiss the entire patent because the claims were withdrawn. I mean, there was no stipulation. We didn't discuss it, force it. Without prejudice, she can't rule, as she apparently does, on the entire patent if a portion of it's not before her. They were withdrawn and the statement- But she seems to have assumed as well that they were before her and she could rule on them. So why don't we just deal with this case the way you and everyone seems to have dealt with it, which is that we're really reviewing whether she got the plug claim construction right. One could. One could do that, but- If you do, you're in real trouble, aren't you? Because there's no elastomeric. There's nothing- The claim says plug, period. It doesn't say elastomeric. It doesn't have all of the bells and whistles that she plugs into it out of the preferred embodiments. Your Honor, this is a case like so many where we need to return to first principles of what this is all about, which is understanding what a person of ordinary skill will see when he comes to that patent, finds the word plug, and it is not- So you want to argue plug too? I'm prepared to argue plug. Is it before us? What's your position about that? My position, Your Honor, is that Judge Rader is correct in the sense that although the plaintiff tried to withdraw without prejudice, there was no stipulation to that effect. They just withdrew their claims. And so the court was justified in entering judgment on those claims. It was over. Where's the stipulation in the record? There is no stipulation. That's my point. It was withdrawn unilaterally. Well, where's the unilateral withdrawal? What page is that at? I know that it occurred in oral argument. It occurred at A2311. A2311. Medegin's opposition to the motion for summary judgment. Where do we find that on that page? Well, it says Medegin stipulates, I'm looking at line 21, without waiving any rights on appeal, that these claims are not infringed under that claim construction, under the plug claim construction. But that's not the same thing as withdrawing the claims. Where do they withdraw those claims? At the same page, Your Honor, they said, the only asserted claims therefore at issue for this motion are 28 and 42. Well, that's not quite the same thing as withdrawing the claims. I was under the impression that they dismissed the plug claims. Am I wrong about that? They were not formally dismissed, Your Honor. Why do we have the impression that they were dismissed? Well, Your Honor, ICU addressed all claims in the summary judgment motion. And in response, they said, we're only going to address claims 28 and 42. And that was a unilateral action on their part. And the trial court is justified in holding them to it. Or at the very least, the consequence of that. Doesn't the blue brief tell us that they withdrew the claims without prejudice? I'm looking for that. Mr. Dane, did you withdraw these without prejudice? Excuse me, Mr. Cooley, this doesn't count against his time. Your Honor, I apologize. I was not counseled below, so I apologize for my lack of clarity on this. I do not believe that they were withdrawn without prejudice. I think that the only thing that was done is the stipulation that's contained in the brief, which was the understanding that based upon the court's claim construction, there would be no infringement. I am not aware of those claims. So they weren't dismissed? Not that I'm aware of. I'm looking at page 4 of your blue brief. Accordingly, this is the bottom line, Medegin withdrew those claims without prejudice to its rights and to reinstate them in the event this court's claim construction was reversed on appeal. But, of course, if you withdraw them without prejudice, there's no final judgment they can't be on appeal. And I apologize, Your Honor, this was poorly stated, inaccurately stated in the brief. The citation that we give is the citation to the page that Mr. Cooley referred to, which is the only statement on the issue as far as I am aware. So I apologize for my having contributed to the court's confusion. This is a rather major mistake to have made. Let's proceed, Mr. Cooley. Your Honor, I was going to address the issue of why we shouldn't get into the new argument based on a general purpose dictionary. But let me go right to plug because I can see that's the area of greatest interest. And, again, we need to keep in mind the fundamental principle that we're trying to figure out. The claim says plug. The claim says plug. And you want to put in elastomeric. You want to put in all sorts of things that are not in that word. No, Your Honor. What I want to do is understand what a person of ordinary skill would understand that plug to mean, knowing, as one of ordinary skill does, that it's not a term of art. Plug is not very hard to misunderstand, is it? It's not a term of art in this art, Your Honor. There are all sorts of things that a plug can be. And without some definition, it's meaningless in the context of this patent, and that's what's critical. So our job is to – The patent could have defined that term. It could have, and it didn't. If it did expressly, we wouldn't be here. The only reason we're here – We all know a plug, you can fill a hole, which is what a plug does, with something other than elastomeric or rubber, right? A plug generically, yes, that's true. And as counsel has admitted, plug is not a term of art in this field of technology. If it's not a term of art, it's an ordinary one, and it can be understood then easily to serve the function of a plug, which is anything that fills a hole. No, Your Honor. What matters here, if it's not a term of art, it doesn't have a specific definition that's brought to it by the art in all patents. But our case law is really clear that you don't bring in the preferred embodiment when you have a broad generic term like this. That's Phillips. That's exactly the case of Phillips where there was an effort to import angles. Oh, sure. Phillips told us, though, very, very clearly, that that concern on importing limitations and the other concern that it's up against intention all the time about interpreting the terms in accordance with the specification isn't best. Yeah, but there is no such thing as a single embodiment rule. The fact that the specification describes only a single embodiment doesn't authorize you to limit broad claim language to the single embodiment that's disclosed. Absolutely. We are not arguing otherwise. So what language is there here in the specification that limits the plug to an elastomeric plug? Fine, and I will address that. Elastomeric, flexible, and so on. And again, what Phillips tells us to do is look at this patent and what the context here, and a person of ordinary skill would look at this patent and find the context first. And in the specification at column 6, line 35, it refers to the elastomeric valve plug of the present invention. And so we see the elastomeric quality of the plug. We're already under the presently preferred embodiments clauses, aren't we? Yes, that happens there. If we go back, I've highlighted plug every time it appears in this patent. And the majority of the time it appears, and it's dozens of times, it appears simply as plug. And in the background, as Mr. Dane was discussing with us earlier, it's talking about that plug as displacing. Anything that displaces seems to be a plug, as this says. Well, again, our job is to look at what a person of ordinary skill would conclude when looking at the landscape and all the context. But you told us it's not a term of art, and you told us it's not defined in the patent. Haven't you just conceded that it's then an ordinary term, and we read it with ordinary meaning, and that's not elastomeric or collapsible? No, Your Honor. And the reason is it's not defined as such. Plug means, quote, elastomeric, et cetera. That doesn't appear, but indirectly it is defined because we look at the context of how it is used. So the first point is that it's tied to the invention of the language. But that sounds like to say that we look in the context. It sounds as though you're saying if there's only one embodiment described, that's the context, and that limits the term. But that's been rejected. No, Your Honor, Judge, I absolutely agree with that. And we are not arguing that just because there is a single embodiment that the term has to be construed in accordance with the single embodiment. That there is only one embodiment is a factor to be considered. It's one thing that the person of ordinary skill will notice when he comes into this patent and he sees how, what kind of a tool are we talking about? So there's the accordion embodiment and there's the collapsible, bendable top. Yeah, but the bendable top is there everywhere. The collapsible part is just the distal portion. So we really don't need to be concerned about that one here. So the question is, and I have five or six things, that a person of ordinary skill will see when he looks into this. The second thing he sees is in the summary of the invention. We have two places there where when you look at the description of how this invention works, the elastomeric nature of the plug has to be present. If you look at column four, lines 33 to 45. That's a four, lines 33 to 45. This is about the shoulder seal. This doesn't say elastomeric. I know it doesn't say elastomeric, but it necessarily implies elastomeric qualities. Well, this just talks about a movable plug. It talks about a shoulder seal where one portion of the seal will touch, I'm sorry, one portion of the plug will touch the seal and create a seal and the other won't when it's in an open position. And when it's in a closed position, it'll touch all the way around. The only way that that happens, this is illustrated in figure two, the only way that can happen is with a flexible plug. That's what our expert said. When someone looking at this patent, a person of ordinary skill, comes in and sees how this works, then they will understand it because it's described that way. I should pause here to point out that Metagen raises a coin differentiation argument here that doesn't work because it confuses what's a necessary and sufficient condition. By the way, the best plug definition is the one I found at column four, lines 7 through 10. The plug has a generally syndrilical shape, which is generally centered about the inlet port axis, and the plug is adapted for being moved from a closed position to an open position. Nothing about elastomeric, nothing about buckling, it's just a plug. That's true, Your Honor. And it describes fully its function. And that could be a solid plug. What I'm trying to get across here is that to the extent there is any indication in this patent, in every place, about whether this plug is rigid or elastomeric, everything points to elastomeric. Nothing points to rigid. Every flag points in the same direction. What other language, before you run out of time, what other language in the specification? At three, column three, lines 31 to 49, there is a discussion of a hollow passage in the biased member, which is adapted to expand and contract. And the expansion and contraction, it's illustrated in figure nine, where it has an obviously elastomeric anchor. And I want to point out in the second one that I brought up, the claim differentiation argument with respect to claims 10 and to 13 doesn't work, because although the plug must be elastomeric, it may not be elastomeric enough to do the specific things that are claimed in 10 to 13. The fourth thing that the person of ordinary skill will see, that the only plug that is described and illustrated is elastomeric. The fifth thing that a person of ordinary skill will see here is that there's no hint either of the existence of any rigid plug or any explanation or hint about how it might work in the context of the invention as it's been described here. And the sixth thing that the person of ordinary skill would see is that the prosecution history emphasized that all illustrated embodiments pivot and that a non-collapsible portion of the plug, dealing then with the distal portion, can still be bendable. So what is the person of ordinary skill to conclude from all this very consistent and uncontradicted set of intrinsic evidence pointers? It is that the plug that we're talking about here is an elastomeric plug. The public notice function here means that we need to be empathetic to the person of ordinary skill, just as in this case I think we need to be empathetic with the trial judge who made, as the underlying court did in Vanderlande. I certainly will agree with that. That argument was directed precisely at you, Judge Walker. But no, we all keep this in mind. The Vanderlande case is a very helpful one here, even though it wasn't cited, I think, in response to the reply. It was important for me to bring it to the court's attention. That's at 366 F1311. Did you mention to opposing counsel you were going to raise this case? I did not, Your Honor. You're not supposed to get up there and rely on new authority that you haven't mentioned. I apologize. I was not aware of that. The case itself is cited in Phillips, which is in front of the court. How would you distinguish this from Phillips? This seems to me to be very much like the Baffle case where we wouldn't import an angular limitation, and here you're asking us to do something very similar. It's a lot more like ALEC, which looks at the context. In Phillips, there wasn't all the context that I've laid out here for the court. ALEC was the interlocking floor panels, right? Yes, that's right. You look at all of the context. But the invention wouldn't have worked in ALEC without, I think it was, play or space between the slots to allow them to be inserted? Yes. One of the factors in ALEC was the fact that that was referred to as inserted. It's certainly going to work with a solid plug or an elastomeric plug. There is no indication in the patent whatsoever, not even a hint that this could work with a rigid sort of plug, different than the plug that's described. I read you about the cylindrical shape and all of that. Nothing about requiring elastomeric for the basic function? Indeed. What is revealed in the patent, the elastomeric feature having been stated by the inventor as the plug of the invention, what is it that one of ordinary skill is going to read here? And on that particular point about whether it will work or not, that's the point that I'm trying to make with respect to the trial court. The trial court credited the testimony of the only independent expert in the case that it would not work, as against the testimony of the inventor who said, Oh, well, yes. It could work because there are variations in how the lure is actually manufactured, so the problem of creating a seal against the plug really won't be a problem at all. Mr. Pooley, we'll give you an additional two minutes and then we're going to let Mr. Dane run over by the same amount that you've run over so that he gets a chance to argue some points we didn't give him a chance to argue before. Thank you, Your Honor. Two minutes from about now. All right. Thank you, Your Honor. And so I do want to get back to the two points. Let me make two points. One is the difference to the trial court in this case where the trial court at least impliedly found and credited the testimony of the expert, the independent expert, as opposed to the inventor, that the invention would not work with a rigid plug. What does that mean, that it wouldn't work? I mean, the accused's device here, your claiming, comes within the claims of this patent. It works. What do you mean it wouldn't work with a rigid plug? Well, what he means that it wouldn't work is that, as he described, when the lure comes in contact with a rigid plug, it will seal up in a way that you don't want. But with the elastomeric plug of the invention, it bends away from the lure and you don't get that seal. That's the point that he was making. So the inventor tried to come back and say, well, that doesn't really matter because lures are made with manufacturing variations, and so sometimes they'll be a little bit different. That's a direct contradiction to what the inventor said to the PTO at A1851 in characterizing a piece of prior art that it was necessary, in order to avoid that kind of sealing, to have protuberances at the end of this rigid plug. Final comments, Mr. Pooley, for us? Well, the final comment, Your Honor, is that on the issue of the dictionary definition, which was raised on appeal for the first time, again, that definition, in the absence of any showing below that a person of ordinary skill in the art would turn to or use a general dictionary definition, which we know not to be true, that extrinsic evidence really represents a major change in position had it been presented below, we would have been able to present more specific evidence. That court would have had record evidence on that point, as would this court. And so that new offered construction should not be considered. Thank you, Mr. Pooley. Mr. Dane, I'm going to give you seven minutes. Thank you very much, Your Honor. That's about the same time as Mr. Pooley got with his overrunning of time. Thank you, Your Honor. I appreciate it. And again, my apologies for our using inaccurate and obviously misleading. Let me pick up on this point that's bothering me. The position that you're taking now with reference to definition of a plug is different from that taken in the trial court, correct? Your Honor, I submit that it's not. We made two arguments below. One of them was that plug was an ordinary term that didn't need to be construed at all. That's the position we're taking on appeal. There was an alternative position where we said it was a biased member that moves from an open and closed position. When we looked at the other claims and realized that the part of that about open and closed position was entirely redundant because the open and closed position movability is in all the claims anyway. So the position that we're asserting on appeal, Your Honor, is that plug is an ordinary term that does not need to be construed. The only evidence, if you can call it evidence, that we have relied on that's anything different than what was relied on below were dictionary definitions. This court in the C.R. Bard case, looking back at the briefing in that case, was an identical situation where the party had argued below that a term did not need to be construed other than its ordinary meaning. On appeal referred the court to certain dictionary definitions. The court considered those dictionary definitions, rejected the patentee's position in that case for a number of reasons, but there was no suggestion that that's improper. This court can take judicial notice of dictionary definitions and resorts to dictionary definitions on a regular basis. We cited cases in which this court has acknowledged that it always has the right to look at dictionary definitions. Here, we don't have any argument that's been made that plug doesn't mean something to fill a hole. The only reason we put in that was as a reality check. That's what a plug is. A plug is what you expect it to be, something to fill a hole. I submit that if the court decided that it was improper for us to have introduced the dictionary definitions on appeal, the result would still necessarily be the same. The question is, does the term plug acknowledge not to be a term of art, acknowledge not to be a technical term? Clearly not an amorphous term, a term that people understand. In determining claim construction of that term, is it proper to just leave it as it is and say the jury's going to understand what a plug is? Or should you engraft upon that the requirements that it have a reduced diameter portion, that it be elastomeric, that it be bendable or pivotable? As Judge Rader has indicated, that would be completely contrary to this court's jurisprudence. This is a case where there is a clear distinction. This is a patent that's actually written very clearly to make the distinction between the preferred embodiments and the invention as a whole. In the abstract or the summary, no mention ever of a rigid plug at any point, only in the description of the preferred embodiments. This is not a case where, in the prosecution history, the patentee ever, and this is particularly important because the lower court got confused about this point, the patentee never argued against the prior art based upon the non-rigidity of its plug, even though the prior art that it was distinguishing involved rigid plugs. We cite it to this argument in the prosecution history involving the Rogers patent. With regard to the Collinson patent, which ICU has relied on, there was one claim, and it was a dependent claim, it wasn't the entirety of the invention, and that one claim required that the opening of the connector have a planar surface, so a smooth surface. Collinson didn't have that. Collinson had these bumps, which were intended to allow the fluid flow when the actuator was inserted. For that one claim, the patentee relied on that one particular difference, which is something that you could say would be a difference a rigid plug would have. That was the only claim on which that distinction was made, and it was specifically made in the context of a dependent claim that it involved a planar surface element. The main distinction, and this is what I was talking about before in terms of what this invention is about, is that the prior art did not disclose self-flushing. The reason it didn't disclose self-flushing is the way that this was done before is that you would try to have a valve that would prevent the liquid from being able to flow back. Once you had gotten the liquid into the catheter, you'd try to shut that off. This was a completely different design. The design here was to keep the outlet port open at all times and in communication with the internal chamber. What that did is, because you're allowing the liquid that's going into the patient to be able to move back and forth, you can then manipulate the flow. When you construct the structure that's the structure of this invention, where you have a separate chamber, and you use this plug, whatever, elastomeric or not, you use the volume of the plug, just the fact that it has volume. You put that volume into this other chamber. By doing that, you're manipulating the amount of available volume in the internal chamber so that you can reverse the normal phenomenon of retrograde displacement. When you actually pull out the connector, instead you're getting what you want. You're self-flushing the plug by having liquid go into the body. This was the grounds upon which the patentee distinguished the invention throughout the prosecution history. It's in the prosecution history that's of record. If the court looks at the notices of allowance that the patent examiner gave, all of them have to do with these features, the constant communication of the chambers. They do not have to do with any notion of rigidity. This is a case where the claim term is unmodified, where there is nothing in the description of the invention as a whole that describes the plug as being elastomeric, where the abstract and the summary do not indicate it as elastomeric, where the patentee during patent prosecution did not try to argue that the reason that the patent was issuable despite the prior art was because the plug was elastomeric. It is not an amorphous term. It is a situation where, clearly under this court's jurisprudence, the term should be given its plain and ordinary meaning. That's the presumption that we start out with, and then there has to be some reason to go against that presumption. And there is no evidence in the intrinsic evidence here that would indicate that that should be done. Lastly, just with regard to the point that Mr. Poole made with regard to the disclosure in the invention, I would note that in the summary of the invention, the one paragraph in the summary of the invention that's talking about the invention as a whole is the first paragraph in column 2, lines 33 to 38. And all that talks about is a biased member that can be moved by the actuator to displace air out of the internal chamber while significant fluid is not displaced during actuation. Then the summary of the invention goes on to describe various different aspects of the invention. So it talks about the accordion embodiment. It talks about the non-accordion embodiment. But then it's talking about embodiments. The sort of general language that applies to everything is in the very first paragraph. I see my time is up. If Clifford has any further questions, I'd be happy to address them more. Thank you very much, Mr. Dane. Thank you very much, Tom. That concludes our work today.